John Carroll Young, J.
This claim based on alleged negligence of the State was duly and timely filed; the claim was originally entitled “ William D. Hanna, Jr., an infant over the age of 14 years, by his Guardian ad Litem William D. Hanna. ”; on the trial the title of this action was amended to appear as above, since the infant became 21 years of age on September 23, 1964.
The claimant herein, on May 21,1962, was a physical education student at Cortland State Teachers College; as a part of his curriculum, he was required to take so-called “activity courses ” in which he and his classmates received instructions in various athletic games, including baseball; in these courses the claimant with other students played on teams made up from the various groups taking such courses; during the games instructions were given by the instructors in charge.
For about three years previous to said 21st day of May, 1962, claimant had regularly worn eyeglasses, but neither on that date nor on other days had he worn any protective shield or guard over his glasses; at the beginning of the baseball season, claimant, along with other members of his class, was given a *10 typewritten outline of instructions which included reference to the use of protective equipment. •
On May 21,1962, claimant and his classmates were engaged in such, a game of baseball on the grounds of said State college; claimant, temporarily acting as a substitute, was awaiting his turn to take active part .in the game. While, so awaiting ids turn, •no one was umpiring at home plate and the catcher was calling
the balls and strikes. Claimant stated that a dispute arose over one of these calls and he, claimant, announced he would umpire thereafter, and this offer was accepted by the players. The instructor in charge of this class — a Mr. Francis J. Woods — was present at this time, and according to his own testimony was between home., plate and third base, about 10 feet back of the foul line. At this time, there was located behind the catcher a portable backstop or batting cage, the purpose of which was to prevent the spraying or loss of baseballs that were not caught or stopped by the catcher; this backstop, consisting of a metal frame covered by a netting of twine forming openings about two inches square, was the property of said State college.
Claimant took up a position behind this cage or backstop and proceeded to umpire the game. He testified that in this course ;he had participated in about 15 games and that in most of those games the class had used this same backstop, and that he had umpired games from behind it once or twice before; he stated that he was familiar with the fact that a “ foul tip ” frequently escapes the catcher and that he knew the batting cage was purposely so constructed that there was looseness or slack in the net to cause balls to stop and not to ricochet as they would if the net were tight; also, that Mr. Woods had previously instructed the students to stand far enough behind the batting cage- so as not to be hit by a -foul tip.
-,
Claimant testified that the net was frayed “in spots ” and that in certain places where the original string had become broken, it had been patched; he stated, however, -that if there was -a hole in the net in front of where- he stood, he was not aware of it. Another witness produced by claimant stated that any actual holes were low where the-netting was attached to the frame, and another of claimant’s witnesses stated that parts of certain of its strings were broken in two, but none was'missing; this last-mentioned witness admitted on cross-examination that after the accident hereinafter mentioned' had occurred, he had made á written statement in his own handwriting, in which he -stated that the caging was not defective. -
Claimant-stated that as he was umpiring behind' this batting cage, he -wore no protective mask; that there were two - masks *11 available; that the playing catcher wore one of them and the catcher of the opposing team had the other; that he was crouching with his hands on his knees and his face was about one foot from the net; that he had called balls and strikes for about'15 minutes and during this time three or four foul tips struck the net.
Claimant testified that subsequently while he'was so umpiring, and while his face was about one foot from the netting, a' foul tip left the player’s bat, and the ball came through the net and struck and shattered the right lens of his eyeglasses, causing particles of glass to enter and cut the cornea of his right eye.
He was-immediately thereafter taken to the college infirmary and thence to the office of Dr. Wollin, an eye specialist, in Cortland, New York. Dri Wollin removed particles of glass from the eye and prescribed treatment; on several subsequent dates this physician treated claimant who was confined to the infirmary for about one week. After returning to' his home on Long Island, claimant still complained of interference with his vision and consulted one Dr.: Yourish near-his home; this' physician recommended continuation-of Dr. Wollin’s prescribed treatment.
Di. Wollin sworn as a witness for claimant testified that certain minute particles of glass could not be removed and will remain permanently imbedded in claimant’s eye and that the scarring caused by this injury has caused a 42% loss of visual acuity; that where claimant’s vision was corrected by his eyeglasses- to ■ 20/20 before the accident, the vision in the' right eye can now be corrected only to 20/30.'
There is some disparity in the proof as to where the instructor, Mr: Francis J. Woods, was during the time immediately preceding the moment claimant was injured; claimant and one of his witnesses stated Mr. Woods was serving as a coach or as an umpire along the first base line; Mr. Woods and another of claimant’s witnesses testified that he was standing 10 to 12 feet off the foul line between home plate and third base.
There is no doubt, however, that Mr. Woods was present and in position to know, or where he should have known, that claimant was umpiring from behind said batting cage. Mr. Woods stated that the- Use of such a net or backstop is cUstomary under stich circumstances, and'that he had often stationed himself behind such a- cage while instructing his players.
A witness produced by claimant as an expert testified that it is not the general custom and practice' to place a student behind such a batting cage, and that he considered it unsafe practice to do so; that even sUch:use of a wc-m;-backstop would be unsafe; that the net is designed and constructed to absorb *12 the force of the hall so it will drop down and land in the bottom of the cage, and that a baseball, depending on the ability of the pitcher, may travel as fast as 90 miles per hour and its speed may be slightly increased by being foul tipped by a batter; that a person standing behind such a net is, therefore, in a position of danger.
Several witnesses — members of both of the teams playing on the occasion when claimant was injured — were produced as witnesses, some by claimant and others by the State, and it is significant that no witness produced by either party testified that the ball that struck claimant actually went through the net.
Claimant admitted that no one told him the ball went through, and he stated that immediately following his injury, he cupped his hands over his eye and did not attempt to ascertain that the baseball had actually come through the net; he said he never saw the ball again. His statement and testimony that the ball did in fact come through the net is apparently a conclusion he reached, based upon his contention that the part of his body nearest the net was his face, that his face was one foot from the net, and that the slack of the net was not sufficient to allow the ball to thrust it back that distance and as a result strike his eyeglasses.
The pitcher who pitched the ball which was foul tipped and struck claimant, produced as a witness for the State, testified that prior to the time claimant was hurt, he had observed claimant’s position behind the backstop and that previously, at one time during this game, claimant was leaning on the net and looking through it with his face only the thickness of his hands, from the net. This witness also stated definitely that the ball did not go through the net.
Several other witnesses testified that the ball did not go through, and the court finds as a fact herein, that the ball did not pass through the net.
On all of the evidence, the court finds that any worn or defective condition of the net, as testified to by any witness herein, was not the proximate cause of the accident resulting in claimant’s injuries.
The court finds that the use of a portable backstop in a noncompetitive practice game of baseball such as that in which these students were engaged, does not constitute negligence on the part of the State or its employees.
The claimant is an intelligent young man, was familiar with the game of baseball and was aware of the risks involved in acting as he did. Even assuming that proper supervision of this class conducted by Mr. Woods required that he observe *13 claimant’s position close behind the backstop and that he should have specifically directed claimant to change his position and, also, assuming that his failure to do so constituted negligence, the court finds that claimant was aware that there purposely was slack in the netting of the backstop and was chargeable with knowledge that to stand with his face too close to the net would be dangerous, and that his act in doing so constituted contributory negligence which was the proximate cause of the accident resulting in his injuries.
The State was not the insurer of the claimant’s safety. (Cambareri v. Board of Educ.) 246 App. Div. 127, affd. 283 N. Y. 741.)
Due to the serious and permanent nature of claimant’s injury and due to what this court deems to be a narrow line of demarcation between the duty of the court to deny claimant any recovery or to grant him a substantial award for his injuries, the court has considered the various aspects of this claim viewed in the light of decisions in similar cases in which the courts have enunciated rules governing assumption of risk, where it has been held that foresight of the consequence is an element therein and that there is a borderland where the concept of contributory negligence merges almost imperceptibly into that of acceptance of risk (McFarlane v. City of Niagara Falls, 247 N. Y. 340).
It may be argued that claimant did not assume the risk since all the elements of the doctrine of assumption of risk may not have been present, .such as a “ voluntary exposure to the danger in circumstances as would indicate or impute to the plaintiff an acceptance of such risk and an intention to relieve the defendant from liability ” (Verduce & v. Board of Higher Educ., 8 N Y 2d 928; McEvoy v. City of New York, 266 App. Div. 445; Shearman & Redfield [rev. ed.], Negligence, § 135) — and since claimant was engaging in this game as a part of his required courses in his college curriculum, an element of compulsion was present. However, his act of umpiring this contest was, according to his own statement, a voluntary one and constituted a phase of activity upon which he entered without direction or requirement. If in neglect of Ms own safety, he failed to foresee the danger of standing too close to the netting, after his attention had been drawn to the apparent danger not only by prior warnings of his instructor, but by Ms own observations prior to his injury, this personal neglect bars his recovery.
The court has also considered those cases in wMch it has been held that momentary forgetfulness of a known danger is not *14 contributory negligence as a matter of law (Bassett v. Fish, 75 N. Y. 303; Dollard v. Roberts, 130 N. Y. 269), but finds that this rule is not applicable in the present case since the claimant stated that three or four foul tips struck the net before the one that injured him, and it appears that he was or should have been thereby alerted to the danger of his being struck and should have maintained a safe distance back from, the danger, zone close to the net. His failure to thereafter maintain such safe distance was negligence.
The motions to . dismiss made by the Attorney-General upon which decision was reserved on the trial are now decided as follows:
, The motion made at the end of claimant’s case is denied.
The motion made at the end of the entire case is granted.
'The.claim must be and hereby is dismissed.