**Moss DUDLEY, Appellant,**

**v.**

**WILLIAM PENN COLLEGE and Leon Richardson, Appellees.**

No. 2–56430.

Supreme Court of Iowa.

June 26, 1974.

Heslinga & Heslinga, Oskaloosa, for appellant.

James M. Holcomb, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellees.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP and HARRIS, JJ.

UHLENHOPP, Justice.

The main question in this personal injury case is whether a fact issue exists as to the defendants' negligence.

Plaintiff Moss Dudley, a student at William Penn College, was a baseball pitcher of considerable ability. Starting at age eight, he played baseball in the Little League program, and thereafter he played in Babe Ruth League. He played baseball in high school and later at a two-year college. He then obtained a baseball scholarship at William Penn. He was in his junior year at Penn at the time of his injury.

Penn, which belongs to the Central Iowa Conference, had a home day-game of baseball with Central College on April 23, 1971.

Dudley was sitting 60 feet from home plate in the middle of the Penn bench, which is 36 feet to the left of third-base line as shown on the accompanying sketch.

The Penn diamond does not have dug-outs nor does it have netting between the players' benches and the playing field itself.

While Dudley was sitting on the bench during the game with Central, the batter hit a foul toward him. Apparently Dudley was not watching, as he did not see the ball coming. The player sitting next to him instinctively ducked, but the ball hit Dudley in the eye, inflicting injury. Dudley sued Penn and its baseball coach, claiming negligence.

The two principal contested issues at trial were the negligence of Penn and the coach and the contributory negligence of Dudley. At the conclusion of Dudley's evidence, Penn and the coach moved for a directed verdict on 11 grounds, including the grounds that Dudley adduced no substantial evidence of negligence and that the evidence showed Dudley contributorily

negligent as a matter of law. The trial court sustained paragraphs 1 through 11 of the motion, and Dudley appealed.

■ I. As to the issue of the negligence of Penn and the coach, players in athletic events accept the hazards which normally attend the sport. This does not mean, however, that the sponsor is absolved of using care. He is subject to the general duty to conduct himself as an ordinarily prudent person under like circumstances to protect others from unreasonable risk of harm. Restatement, Torts 2d §§ 282, 283; Prosser, Torts, § 31 at 145, § 32 at 149 (4th ed.).

What the law regards as unreasonable risk of harm to players is somewhat unique in athletic contests, since risks naturally attend such events. Hence the cases involving successful plaintiffs are not plentiful. Most injuries in athletic contests result from the rough and tumble of the game itself. Cases are gathered in Annotations, 142 A.L.R. 868, 7 A.L.R.2d 704, 35 A.L.R.3d 725, and 36 A.L.R.3d 361. See also 4 Shearman & Redfield, Law of Negligence, § 647 at 1566 (rev. ed. 1941).

■ Where, however, a player does introduce substantial proof of want of due care by the sponsor, the player generates a jury issue on negligence. The negligence may take various forms. Thus in one case, a college located a flagpole within the playing field itself. An outfielder, in his excitement and concentration, forgot about the pole and ran into it while chasing a fly. The court thought the jury could reasonably find the location of the pole subjected players to unreasonable risk of harm. Scott v. State, 158 N.Y.S.2d 617 (Ct.Cl.), app. den., 159 N.Y.S.2d 469 (App.Div.). In another case in which the player prevailed, a proprietor permitted a large rock to remain between third base and home plate, protruding three or four inches above ground and concealed by grass. A player fell over it. Frieze v. Rosenthal, 241 App.Div. 719, 269 N.Y.S.

1010 (see 148 Misc. 273, 264 N.Y.S. 378). See also Domino v. Mercurio, 17 A.D.2d 342, 234 N.Y.S.2d 1011, aff'd, 13 N.Y.2d 922, 244 N.Y.S.2d 69, 193 N.E.2d 893 (recovery allowed); Rapisardi v. Board of Education of City of New York, 242 App. Div. 647, 273 N.Y.S. 360 (allowed); Gaspard v. Grain Dealers Mut. Ins. Co., 131 So.2d 831 (La.App.) (recovery denied); Robert v. Deposit Central School Dist., 13 N.Y.2d 709, 241 N.Y.S.2d 843, 191 N.E.2d 901 (denied); Weitzen v. Camp Mooween, 163 Misc. 312, 295 N.Y.S. 640 (denied); Hanna v. State, 46 Misc.2d 9, 258 N.Y.S.2d 694 (denied); Gordon v. Deer Park School Dist., 71 Wash.2d 119, 426 P.2d 824 (denied).

Evidently intending to show negligence by breach of custom, Dudley endeavored to prove that in the Central Iowa Conference, screening or otherwise protecting the bench area was customary. He failed however to show such a custom. Some fields in the conference have protective screens, some not. Indeed, more schools Penn plays do not have than do have screening. A few have dugouts, but not all of these have protective screens at the head-level of the players.

■ We are not dealing here with a spectator. As to such persons, compare Aldes v. St. Paul Ball Club, Inc., 251 Minn. 440, 88 N.W.2d 94, with Hunt v. Portland Baseball Club, 207 Or. 337, 296 P.2d 495. We are dealing with a member of the team, located on a bench 36 feet from third base line and 60 feet from the batter. The principal claim is that Penn and the coach should have protected the players by a fence, a screened dugout, a greater distance, or some other method. But without adducing substantially more evidence than he did, Dudley did not generate a jury question on negligence. See Schentzel v. Philadelphia National League Club, 173 Pa.Super. 179, 186, 96 A.2d 181, 185 (no proof by expert testimony, custom, or otherwise of standards regarding pro-

tective fences—"the jury were nevertheless permitted to set a theoretical standard of due care upon which to predicate their finding of negligence. We think their verdict under these circumstances cannot represent more than mere conjecture"). See also Grimes v. American League Baseball Co., 78 S.W.2d 520, 521 (Mo.App.) (evidence as to "practice prevailing in all similar parks"); Cates v. Cincinnati Exhibition Co., 215 N.C. 64, 67, 1 S.E.2d 131, 133 ("in general and customary use in similar parks").

The trial court properly sustained the ground of the motion to direct relating to negligence. We thus have no necessity to consider the issue of contributory negligence by Dudley.

■ II. Dudley claims the trial court did not rule separately on each ground of the motion to direct; hence the case should be remanded for a second trial. See rule 118, Rules of Civil Procedure. We have examined the proceedings in the light of Ruby v. Easton, 207 N.W.2d 10 (Iowa). The trial court stated that Dudley "failed to generate a jury proposition or a matter for consideration with reference to alleged negligence on the part of the Defendants"—the basis on which we too found the decision. Moreover, the court sustained the motion on the basis of paragraphs 1 through 11. We think the court minimally complied with rule 118, although it might well have elaborated upon its reasons for sustaining the other paragraphs.

As a possible saving of time and expense to the litigants, the trial court might well have submitted the case to the jury and then ruled on the sufficiency of the evidence on a post-verdict motion in the event of a plaintiff-verdict. See Florke v. Peterson, 245 Iowa 1031, 65 N.W.2d 372. But in view of the insufficiency of the evidence on negligence, we hold the trial court properly sustained the motion to direct.

Affirmed.