Virginia PARSONS, Appellant,

v.

The NATIONAL DAIRY CATTLE CONGRESS, an Iowa Corporation, Black Hawk Enterprises, Inc., an Iowa Corporation, and City of Waterloo, Iowa, a Municipal Corporation, Appellees.

No. 61720.

Supreme Court of Iowa.

April 25, 1979.

Upton B. Kepford, of Kennedy, Kepford, Kelsen & White, Waterloo, for appellant.

Jay P. Roberts, of Swisher & Cohrt, Waterloo, for appellees National Dairy and Waterloo.

Edward J. Gallagher III, of Gallagher, Martin, Keith & Langlas, Waterloo, for appellee Black Hawk.

REYNOLDSON, Chief Justice.

On December 8, 1973, plaintiff Virginia Parsons was struck by a hockey puck while she was a spectator in McElroy Auditorium in Waterloo. She brought this tort action

against The National Dairy Cattle Congress, owner of the auditorium, the City of Waterloo, lessee, and Black Hawk Enterprises, Inc., sublessee and owner of the local hockey club. She alleged her injuries, suffered while returning to her seat after intermission, were proximately caused by defendants' negligence in failing (1) to provide her with a safe place from which to watch the game, and (2) to erect "barriers or other obstacles" to protect her from errant hockey pucks.

Defendants denied Parsons' allegations of negligence and proximate cause and affirmatively pled assumption of risk and contributory negligence. Trial court sustained the third of defendants' summary judgment motions based on the assumption of risk defense.

Parsons' appeal raises one issue: Did trial court err in holding she assumed the risk of injury as a matter of law? We reverse and remand for a trial on the merits.

I. We examine trial court's ruling in the context of a tort action terminating in a summary judgment. Applicable principles were reviewed extensively in *Daboll v. Hoden,* 222 N.W.2d 727, 731–36 (Iowa 1974). The burden is upon the movant to show absence of any genuine issue of material fact. Where the evidentiary matter in support of the motion does not establish such absence, summary judgment must be denied even if no opposing evidentiary matter is presented. All material properly before the court must be viewed in the light most favorable to the opposing party. *Id.* at 731; *see also Lindsay v. Davis,* 276 N.W.2d 423 (Iowa 1979); *Steinbach v. Continental Western Insurance Co.,* 237 N.W.2d 780, 783 (Iowa 1976); *American Telephone & Telegraph Co. v. Dubuque Communications Corp.,* 231 N.W.2d 12, 14–15 (Iowa 1975). If reasonable minds could draw different inferences and reach different ultimate conclusions from undisputed facts, the issues must be reserved for trial and summary judgment is improper. *Brody v. Ruby,* 267 N.W.2d 902, 904 (Iowa 1978). On review we are guided by the same principles. *See Drainage District No. 119 v. Incorporated City of Spencer,* 268 N.W.2d 493, 500 (Iowa 1978).

II. By their answers and summary judgment motions defendants based their assumption of risk and contributory negligence defenses on the same premise: Parsons, an experienced hockey fan, knew hockey pucks occasionally were shot, passed, and deflected into spectator areas. They contend "she assumed all risks in going to a hockey game including being hit by a puck . . . while going to and from one's seat as well as being struck while seated as [a] spectator."

This reliance on both contributory negligence and assumption of risk is an apparent violation of the rule laid down in *Rosenau v. City of Estherville,* 199 N.W.2d 125, 133 (Iowa 1972):

> We hold that in a common-law tort case in which defendant raises the issue of plaintiff's negligence, the elements of "assumed risk" shall no longer be pled and instructed on as a separate defense. The facts of the case, as they bear on the reasonableness of plaintiff's conduct, may well be proper affirmative allegations of plaintiff's negligence in the answer. . . .

> We thus abolish assumption of risk as a separate defense in all cases in which contributory negligence is now available as a defense.

Trial court acknowledged *Rosenau* but held: "[U]nder the facts in this case, contributory negligence would not be a defense and so the defendants are entitled to rely on the defense of assumption of risk."

■ We do not agree with this conclusion. The defense of contributory negligence was and remains available to defendants in this action. Parsons' cause of action was based on common-law tort and allegations of defendants' negligence. There is no statutory or case-law restraint on defendants' right to plead and attempt to prove that Parsons was negligent and contributed to her own injury. *See* 57 *Am. Jur.2d Negligence* § 288, at 684–86 (1971).

This does not mean that defendants may rely only on contributory negligence. *Rosenau* holds only that in a negligence action the defense of assumption of risk, as used in its secondary sense, is indistinguishable from contributory negligence and is better treated as a component of the latter. In determining whether a plaintiff acted reasonably, one factor the jury will consider is any appreciated risk. *Rosenau* did not affect assumption of risk in its primary meaning: "an alternative expression for the proposition that defendant was not negligent, *i. e.*, either owed no duty or did not breach the duty owed." 199 N.W.2d at 131.

Since the burden of pleading and proving defendants' negligence is on Parsons, primary assumption of risk is *not* an affirmative defense.

> The burden of proof as to negligence of defendant does not shift to him merely because he chooses to express his denial of negligence in terms that plaintiff assumed (may not complain of) risks which inhered *notwithstanding that defendant properly discharged the duty he owed in the circumstances.*

*Meistrich v. Casino Arena Attractions, Inc.,* 31 N.J. 44, 56, 155 A.2d 90, 97 (1959) (emphasis supplied). The New Jersey court held it would make no difference whether a trial court made a reference in an instruction to assumption of risk "provided that if the terminology is used the jury is plainly charged it is merely another way of expressing the thought that a defendant is not liable in the absence of negligence." *Id.* at 55, 155 A.2d at 96. Four years later the same court concluded the term, even though limited to its primary meaning, "is so apt to create mist that it is better banished from the scene. We hope we have heard the last of it." *McGrath v. American Cyanamid Co.,* 41 N.J. 272, 276, 196 A.2d 238, 240–41 (1963).

This court pioneered the *Meistrich* rationale in *Martin v. Des Moines Edison Light Co.,* 131 Iowa 724, 735–39, 106 N.W. 359, 363–64 (1906), an opinion cited in both *Rosenau* and *Meistrich.* That case discusses instructions on primary risk assumption which may be helpful today. Since *Rosenau* we have had no occasion to examine the utility of primary risk assumption for lawyers and judges as a label for denial of duty or negligence. We are unwilling to conclude it should be abandoned.

By the time defendants reached oral submission of this appeal, they were asserting assumption of risk in its primary sense. While we have some doubt that this was the theory pled and submitted on motion in district court, we will assume for the purpose of this analysis it was so pled and submitted.

III. We thus reach the issue whether the record shows as a matter of law that defendants had no duty to Parsons, or that they did not breach that duty. Viewed in the light most favorable to Parsons, the following facts may be gleaned from the record.

On deposition Parsons testified she and her husband started going to the Black Hawk hockey games in 1967. Ordinarily they sat in box seats where a glass barrier provided some protection. She had seen people behind her hurt by pucks lofted into the audience and was aware they posed a danger.

After the first period of the game in question, Parsons went to a refreshment stand. She had a soft drink and started to return with another for her husband. Other people were in the aisle around her. She heard no signal that the period was about to start. She was unaware of play on the ice or other indication the game had resumed. As she "rounded the corner" toward her seat she was hit in the face by a puck she never saw.

Parsons testified the hockey arenas she had seen on television provided more protection than defendants' did. It is apparent from the record that defendants provided little protection from flying pucks for persons moving in the aisles.

A. Of course, merely because defendants owned or operated an amusement arena where games are played does not mean they owed Parsons no duty. We have re-

peatedly relied upon the Restatement's description of the duty owed invitees by possessors of land. *See, e. g., Mundy v. Warren,* 268 N.W.2d 213, 217 (Iowa 1978) (quoting *Restatement (Second) of Torts* §§ 343, 343A(1) (1965) (hereinafter cited *Restatement* )); *Frantz v. Knights of Columbus,* 205 N.W.2d 705, 709, 711 (Iowa 1973) (quoting *Restatement* § 343 & Comments b & d, § 343A & Comment b); *Weidenhaft v. Shoppers Fair,* 165 N.W.2d 756, 760 (Iowa 1969) (quoting *Restatement* §§ 343, 343A & Comments e & f). Section 343A(1) provides:

> A possessor of land is not liable to his invitees for physical harm caused to them by any *activity* or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*

(Emphasis added.) Comment e describes the usual situation:

> In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

Comment f describes the exception envisioned in the section:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee not-

withstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. . . . *It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.*

(Emphasis added.) Aside from gratuitous language regarding contributory negligence and secondary sense risk assumption, this section and its comments are accurate reflections of Iowa law.

 Also relevant is the substantive tort law relating to places of amusement and patrons of such establishments.

The law is well established that a proprietor of a place of public amusement or entertainment is held to a stricter account for injuries to patrons than the owner of private premises generally. He is not an insurer of the safety of patrons but owes to them only what, under the particular circumstances, is ordinary and reasonable care. He must guard them

not only against dangers of which he had actual notice but also against those he should reasonably anticipate. Failure to carry out such duty is negligence.

*Foust v. Kinley,* 254 Iowa 690, 694, 117 N.W.2d 843, 845–46 (1962). *See also Priebe v. Kossuth County Agricultural Association, Inc.,* 251 Iowa 93, 98, 99 N.W.2d 292, 295 (1959); *LaSell v. Tri-States Theatre Corp.,* 233 Iowa 929, 946, 11 N.W.2d 36, 45 (1943). In *Grall v. Meyer,* 173 N.W.2d 61 (Iowa 1969), involving an injury in a dance hall, we observed the above rule does not change the standard of reasonable care by which liability is measured. "All it does is recognize that the greater the danger, the higher the precaution necessary to constitute reasonable care." *Id.* at 63.

No defendant has yet questioned its status as a possessor of land. It is plain that for purposes of this appeal at least, these owners and operators of the arena owed Parsons a duty.

B. We thus arrive at the second prong of our inquiry: Did defendant show that as a matter of law they did not breach this duty? This obviously relates to what protection, if any, should be afforded persons using the aisles leading from refreshment facilities in operation during play.

"[I]n almost all cases this question of due care [of the owner or operator of a place of amusement], under the circumstances, is a question for the jury." *Priebe,* 251 Iowa at 98, 99 N.W.2d at 295, *quoting Clark v. Monroe County Fair Association,* 203 Iowa 1107, 1113, 212 N.W. 163, 166 (1927); Iowa R.App.P. 14(f)(10).

That this due care issue ordinarily would require expert testimony can be deduced from our prior cases. In *Dudley v. William Penn College,* 219 N.W.2d 484 (Iowa 1974), where this court held a baseball player injured by a foul ball failed to prove defendant's negligence, we referred to *Schentzel v. Philadelphia National League Club,* 173 Pa.Super. 179, 186, 96 A.2d 181, 185 (1953), and other cases for authority that there should be "proof by expert testimony, custom, or otherwise of standards regarding protective fences." 219 N.W.2d at 486–87.

■ Even evidence of compliance with what is customary will not make negligence an issue of law for the court rather than one of fact for the jury. *See Tri-States Theatre,* 233 Iowa at 943–46, 11 N.W.2d 44–45. We there quoted the following from *James v. R. I. Auditorium, Inc.,* 60 R.I. 405, 414–15, 199 A. 293, 298 (1938):

The defendant, relying upon the testimony of its expert, argues that it discharged its full duty to its invitees when it constructed its rink like other hockey rinks in various cities. We do not agree with this contention. The practice in other places and the opinion of the expert in this case are circumstances entitled to proper consideration as evidence, but they are not conclusive.

■ At any rate, in the circumstances of this case we do not believe Parsons was obligated to come forward with expert testimony to defeat defendants' summary judgment motion. *See Daboll v. Hoden,* 222 N.W.2d at 731. Defendants have made no showing of any precautions taken to prevent puck injuries to patrons moving in the aisles. Defendants do not seriously argue that Parsons' conduct at the time and place in issue contributed to her own injury.

Defendants rely on a number of cases in which spectators injured by play of the game were held to have assumed the risk of such injury. *See, e. g., Modec v. Eveleth,* 224 Minn. 556, 29 N.W.2d 453 (1947); *Tite v. Omaha Coliseum Corp.,* 144 Neb. 22, 12 N.W.2d 90 (1943); *Ingersoll v. Onondaga Hockey Club, Inc.,* 245 App.Div. 137, 281 N.Y.S. 505 (1935); *Kennedy v. Providence Hockey, Inc.,* 376 A.2d 329 (R.I.1977). *See generally* Annot., 14 A.L.R.3d 1018 (1967). Relevance of some of these cases is questionable because they turn on assumption of risk in its secondary sense. Transcribed to our principles, some of these cases hold hockey entrepreneurs, as a matter of law, do not breach their duty to spectators by failing to warn of or protect against the open and obvious danger of errant pucks— the spectators assume this risk of injury.

We need not decide whether under comparable circumstances we would follow these cases. Here there is a genuine issue whether due care requires a warning or protection for persons, moving in the aisles, whose attention may be diverted and whose vision may be obscured. This important distinction between a seated spectator aware of play and a patron in the aisle, unaware of play's commencement or resumption, has been made before. *See, e. g., Jones v. Three Rivers Management Corp.,* —— Pa. ——, 394 A.2d 546 (1978) (where patron was hit by batted ball during batting practice while properly using interior walkway from stadium's outer concourse to seats, held, ordinary rules applicable to all other risks which may be present in a baseball stadium should have been applied; jury's verdict for patron not disturbed); *Olds v. St. Louis National Baseball Club,* 232 Mo.App. 897, 104 S.W.2d 746 (1937) (holding jury question was generated whether proprietor was negligent in its duty to exercise ordinary care for safety of patron injured by baseball when proprietor failed to extend screen protection to cover exit necessarily used by her in leaving stand).

We hold the summary judgment motion should have been overruled. We reverse and remand for further proceedings consistent herewith.

REVERSED AND REMANDED.