Douglas Alan CAMPBELL, Appellee,

v.

Tammy Sue VAN ROEKEL and Carla Marie Hundley, Appellants.

No. 83–572.

Supreme Court of Iowa.

April 11, 1984.

Paul E. Horvath of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for appellant Van Roekel.

Brad McCall and Mark A. Otto of Brierly, McCall, Girdner & Chalupa, Newton, for appellant Hundley.

John L. Timmons and Mark Lagomarcino of Pasley, Singer, Pasley, Holm, Timmons & Mathison, Ames, for appellee.

McGIVERIN, Justice.

This case involves several issues that arose during the trial of a personal injury action by a motor vehicle passenger against the driver. and owner resulting from a one-vehicle accident. We affirm on defendants' appeal and dismiss plaintiff's cross-appeal.

On June 30, 1981, plaintiff Douglas Alan Campbell was a passenger in a car owned by defendant Carla Marie Hundley and driven by defendant Tammy Sue Van Roekel, age 17, when it struck a utility pole in Clive causing injury to his nose.

Plaintiff brought an action against both defendants for his personal injuries. Van Roekel admitted she was intoxicated at the time and that her negligence in the operation of the car was the proximate cause of the accident. Plaintiff sought recovery for compensatory or actual damages on a negligence theory against both defendants. He also asked for punitive damages against Van Roekel. Defendants alleged that plaintiff was negligent in a manner that was a proximate cause of his injury and damages.

The portion of the case asking for compensatory damages and involving the parties' alleged negligence was submitted to the jury on a comparative negligence basis. See *Goetzman v. Wichern*, 327 N.W.2d 742 (Iowa 1982). In answering questions in a special verdict, the jury found the plaintiff sustained actual damages from the accident of $20,000, and that negligence of both plaintiff and defendants were proximate causes of plaintiff's injury and damage with five percent of the combined negligence attributable to plaintiff and ninety-five percent attributable to defendants.

In response to other instructions and a separate question, the jury awarded punitive damages of $2,000 to plaintiff against Van Roekel.

The trial court entered judgment in favor of plaintiff against both defendants for compensatory damages of $19,000, after reducing the $20,000 jury verdict for actual damages by five percent. Judgment against Hundley was based solely on her statutory liability under Iowa Code section 321.493 (1983) as owner of the car. Judgment was also entered for plaintiff against Van Roekel for the full amount of the punitive damage award of $2,000.

Defendants appeal, contending the trial court erred in:

1) not properly instructing the jury concerning negligence on the part of plaintiff;

2) not allowing evidence as to plaintiff's scholastic standing and post-accident driving record;

3) allowing cross-examination of Van Roekel concerning payment of her medical insurance by her parents, and Hundley's awareness of Van Roekel's previous drinking and driving activities; and

4) submitting the issue of permanence of plaintiff's injuries to the jury.

On cross-appeal, plaintiff asserts the court should have also submitted to the jury, as an additional basis of liability, an issue of negligent entrustment of the car by the owner, Hundley, to the driver, Van Roekel. At the close of the evidence the court directed a verdict in defendant Hundley's favor on the issue of negligent entrustment.

I. *Instruction on passenger's negligence.* Defendants alleged and asserted that negligence on the part of plaintiff was a proximate cause of his injuries. The claimed negligence was that plaintiff placed himself in a position of jeopardy by riding with the intoxicated driver, Van Roekel, and thereby assumed the risk of injury to himself.

Accordingly, the trial court in instruction 5 told the jury that it could find plaintiff negligent if it found that he assumed the

risk of riding with the intoxicated driver, and that the amount of his recovery shall be reduced by the percentage that his negligence bears to the total negligence that caused the damages. The court instructed, *inter alia,* that defendants must prove the "plaintiff was aware of the intoxication [of Van Roekel] and of the danger to himself from it."

In response to questions in the special verdict, the jury found plaintiff negligent under this instruction and that such negligence was a proximate cause of his injury. The jury further found that plaintiff's negligence was five percent of the combined negligence of plaintiff and defendants that caused plaintiff's injury or damage.

Defendants contend the court erred in connection with instruction 5. We do not approve of the instruction but we find that no reversible error occurred.

A. Defendants first contend the court should have given an instruction as requested by defendants concerning plaintiff's negligence based on the duty of a vehicle passenger which utilized an objective, reasonable person standard. The requested instruction in part would allow a finding that plaintiff was negligent in entering and remaining in the vehicle "when he knew or in the exercise of reasonable care should have known that defendant Van Roekel's ability to drive was impaired."

Therefore, defendants asked for a "reasonable person," or objective standard, to apply on whether plaintiff knew or in the exercise of reasonable care should have known that Van Roekel's ability to drive was impaired and yet he entered and remained in the vehicle.

The court's instruction 5 placed a burden on defendants to prove that plaintiff knew that Van Roekel was intoxicated while driving and that he was aware of the danger to himself from it. Even under this subjective standard, the jury found plaintiff negligent. Therefore, defendants were not harmed by the instruction given.

We, however, do not approve of the instruction given by the court which attempted in the intoxicated defendant driver-plaintiff passenger situation to combine an assumption of risk defense with negligence on the part of plaintiff. We believe that was unnecessary for the following reasons.

Previously in this state, Iowa Code section 321.494 (1979), the guest statute, provided that a motor vehicle guest passenger could not recover against the driver unless the passenger's damage was caused as a result of the driver being intoxicated or reckless while operating the vehicle. In an action by the passenger, assumption of risk by the passenger of the driver's intoxicated condition in the operation of the vehicle was a complete defense.

Then in *Bierkamp v. Rogers,* 293 N.W.2d 577 (Iowa 1980), we struck section 321.494 by declaring it unconstitutional as violative of the equal protection clause of the Iowa constitution.

Thereafter, a passenger could bring an action for his injuries resulting from the driver's negligence and the driver could allege and attempt to show the passenger was contributorily negligent. Such is the situation now. We stated in *Rosenau v. City of Estherville,* 199 N.W.2d 125, 133 (Iowa 1972), that assumption of risk in its secondary meaning was abolished as a separate defense in all cases in which contributory negligence was available as a defense. The term and defense of "assumption of risk" is no longer appropriate in the passenger-driver situation. The driver can, however, allege and show the passenger is negligent under an objective "reasonable person" standard in a manner that was a proximate cause of the passenger's damage.

The next stage occurred when we adopted comparative negligence in *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982). When contributory negligence is urged as a defense, that case requires a recovery for the plaintiff to be reduced by the percentage of the plaintiff's own negligence that proximately caused the plaintiff's damage.

We do not believe the change in the contributory negligence defense in *Goetzman* should affect the holding in *Rosenau* eliminating assumption of risk in its secondary meaning in negligence cases. We do not decide in this case whether assumption of risk should continue to be a complete defense in other situations.

■ This case was tried after *Goetzman*. The court should have instructed the jury in terms of negligence on the part of plaintiff under the usual reasonable person or objective standard without reference to assumption of risk terminology or strictly subjective standards. However, as noted previously, defendants suffered no harm from the improper instruction because the jury found plaintiff five percent negligent notwithstanding the use of a subjective standard in the instruction.

■ B. Defendants next contend the court erred in instructing the jury on "gross negligence," "recklessness," and "wantonness" because such terms are not consistent with a pure theory of comparative negligence. Defendants' argument, however, fails to mention that such instruction was addressed to the issue of punitive damages only and not to the underlying claim of negligence and actual damages. We note that the use of such terms in the court's instruction was proper and necessary for a claim for punitive damages. *See Sebastian v. Wood*, 246 Iowa 94, 66 N.W.2d 841 (1954). We have indicated that the operation of a motor vehicle by a drunken person on a public highway in violation of a statute intended to protect others is itself equivalent to gross and culpable negligence. *See id.* at 106, 66 N.W.2d at 848; *see also Nichols v. Hocke*, 297 N.W.2d 205, 205 (Iowa 1980) ("Under Iowa law exemplary damages may be recovered against one who causes injury by operating a motor vehicle while intoxicated.")

■ C. Defendants further contend that assumption of risk is a complete defense to a claim for punitive damages. Defendants' argument is misplaced, however,

for two reasons. First, there is no legal basis under our past cases for finding a separate defense to a claim for punitive damages. Punitive damages are merely incidental to the main cause of action. *Sebastian v. Wood*, 246 Iowa at 100, 66 N.W.2d at 844. Defendants cannot assert the defense of assumption of risk as to punitive damages when such defense is not applicable to the underlying cause of action from which the claim for punitive damages is derived. See division I–A above.

Secondly, the great weight of the jurisdictions that have adopted the comparative negligence doctrine, and that have considered whether that doctrine requires the reduction of punitive damages by the percentage of plaintiff's negligence, have refused to so reduce the punitive damage award. *Amoco Pipeline Co. v. Montgomery*, 487 F.Supp. 1268 (W.D.Okl.1980); *Tampa Electric Co. v. Stone & Webster Engineering Corp.*, 367 F.Supp. 27 (M.D. Fla.1973); *Shahrokhfar v. State Farm Mutual Automobile Insurance Co.*, 634 P.2d 653 (Mont.1981); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437 (1980). *Contra Pedernales Electric Cooperative, Inc. v. Schulz*, 583 S.W.2d 882 (Tex.Civ.App.1979) (allowed the reduction of a punitive damage award by the percentage of plaintiff's negligence). Preceding authority cited in Annot., 27 A.L.R. 4th 318 (1984); Annot., 10 A.L.R. 4th 946, 955–57 (1981). *See also* 31 Drake L.Rev. 709, 786–89 (1982) (recommendation that punitive damage awards not be reduced by percentage of plaintiff's negligence).

■ Because in Iowa assumption of risk is considered in its "secondary meaning" to be an expression of plaintiff's contributory negligence, *Rosenau*, 199 N.W.2d at 131, the rule in the above cited cases from other jurisdictions would apply equally to a claimed defense of assumption of risk. Thus, assumption of risk is not a defense to punitive damages.

■ The rationale behind this rule is that comparative negligence is a method of *providing compensation to the plaintiff* in proportion to the relative fault of the

parties, whereas the purpose of punitive damages is to *punish the defendant* for his grossly negligent, wanton, willful or reckless misconduct. *Shahrokhfar,* 634 P.2d at 658; *Wangen v. Ford Motor Co.,* 97 Wis.2d at 276, 294 N.W.2d at 446 n. 7.

We conclude that assumption of risk, which was not a defense to punitive damages before we adopted comparative negligence in *Goetzman,* should not be a defense to punitive damages after *Goetzman* either.

The trial court was correct in not regarding negligence or assumption of risk as a complete or partial defense to plaintiff's punitive damage claim. Accordingly, the court properly entered judgment for plaintiff for the full amount of the punitive damage jury verdict.

Defendants' only defense to the claim for punitive damages was to refute it by showing that Van Roekel's driving, while intoxicated, was not a reckless or grossly negligent action. In other words, the core of the issue would be whether defendant's intoxication and actions amounted to "recklessness" and whether the evidence would support such a finding. However, defendants have not assigned specific error on this basis but only on their more vague assertions that an instruction on recklessness is not consistent with pure comparative negligence and that assumption of risk should be deemed a complete defense to a claim for punitive damages.

We find no merit to the assignment defendants did raise on appeal.

■ II. *Limiting scope of cross-examination of plaintiff.* Defendants also argue that the trial court deprived them of effective cross-examination of plaintiff by sustaining a relevancy objection as to an offer of proof concerning plaintiff's academic performance and post-accident driving record. Ordinarily the scope of cross-examination is within the trial court's discretion. We reverse only if there has been an abuse of discretion by the trial court and then only if it appears that prejudice

resulted. *Avery v. Harms Implement Co.,* 270 N.W.2d 646, 649 (Iowa 1978).

■ We conclude the trial court properly exercised its discretion in refusing to permit defendants to cross-examine plaintiff in regard to his academic performance and post-accident driving record. Defendants were not prejudiced by the court's ruling because such evidence was not relevant to the issues before the court.

Plaintiff did not plead or request damages for loss of future earnings or future earning capacity. His academic record, therefore, was not relevant to the issue of damages and thus should not have been exposed at trial.

■ Defendants further contend that they should have been permitted to question plaintiff about his arrest and guilty plea on a charge of driving while under the influence of alcohol which occurred several months after the operation on his nose. Defendants argue that such information was properly within the scope of cross-examination because plaintiff testified on direct exam that as a result of the accident and operation he has been afraid to ride as a passenger in the front seat of a car driven by another person. We do not find an abuse of discretion by the trial court in refusing this inquiry because plaintiff never mentioned on direct that he was afraid to drive but only that he was apprehensive about riding in the front seat of a car driven by someone else. The fact that after the accident and surgery he subsequently was operating a motor vehicle under the influence of alcohol is not necessarily relevant to his alleged fear of riding with others.

III. *Other evidentiary issues.* Defendants also contend the court erred in allowing plaintiff to inquire into matters concerning defendant Van Roekel's medical insurance and her prior driving record and drinking habits.

■ A. *Insurance.* Plaintiff did not expose the existence of any *liability* insurance of defendant Van Roekel to the jury but merely brought out that she was cover-

ed by her parent's *medical* insurance and that her parents paid the premiums on such policy. This was offered to show that Van Roekel was not emancipated from her parents, who were parties at trial but not on this appeal. We find no substance in defendants' reasoning that "the jury could easily infer the existence of other insurance, including liability insurance," from the fact that she was covered by medical insurance. We conclude that such an inference is sufficiently tenuous so as to preclude any prejudice to defendants and, therefore, the failure to prevent such inquiry did not amount to an abuse of discretion by the trial court.

B. *Prior driving record and drinking habits.* The court did not allow the introduction of Van Roekel's official Iowa Department of Transportation driving record. Defendants' objection, rather, is to the fact that the court permitted plaintiff to question defendant Hundley in regard to her personal knowledge of Van Roekel's driving record and drinking habits. This testimony came in on the issue of Hundley's alleged negligent entrustment of her automobile to Van Roekel. Such inquiry as to Hundley's personal knowledge of Van Roekel's prior driving record and drinking habits was proper at that stage of the trial because such information is the gravamen of a negligent entrustment cause of action. *See Beardsley v. Ostrander,* 254 Iowa 356, 118 N.W.2d 61 (1962); *Krausnick v. Haegg Roofing Co.,* 236 Iowa 985, 20 N.W.2d 432 (1945). Accordingly, the trial court did not abuse its discretion in permitting such inquiry.

IV. *Submission of permanent injury to jury.* Defendants' final contention is that the court erred in submitting the issue of plaintiff's permanent injury to the jury. They argue that there was insufficient evidence of permanent injury to warrant such submission. The record, however, reveals ample evidence from the medical files and medical testimony that plaintiff sustained a fractured nose in the accident and that he was left with a deviat-

ed septum and nasal obstruction, even after corrective surgery, which makes breathing difficult. We find no error in the court's submitting to the jury the issue of permanency of plaintiff's injuries.

We have considered all of defendants arguments, even though not specifically addressed, and either find them without merit or unnecessary to our disposition of the appeal.

V. *Cross-appeal.* We need not consider the merits of plaintiff's cross-appeal concerning the court's failure to instruct the jury on the issue of negligent entrustment in view of our disposition of defendants' appeal and plaintiff's statement in his brief that "only in the event of a reversal and a remand on Ms. Van Roekel's appeal should this issue be considered by the Court."

Having found no reversible error, the case is affirmed with plaintiff's cross-appeal dismissed.

AFFIRMED ON APPEAL; CROSS–APPEAL DISMISSED.

All Justices concur except UHLENHOPP, J., and SCHULTZ, J., who dissent in separate opinions, and WOLLE, J., who joins both dissents.

SCHULTZ, Justice (dissenting).

Because I cannot agree with the majority's reasoning and result in Division I, I respectfully dissent.

My first disagreement concerns instruction five. The majority, while conceding the instruction was faulty in combining assumption of risk (a subjective test) with negligence (an objective standard based on reasonableness), concludes the error was harmless. I, for reasons that will be explained later, believe the erroneous instruction requires a new trial.

More fundamentally, I believe this case reveals inconsistencies lurking in our tort law since our adoption of comparative negligence[1] and requires us to reexamine our

---

1. *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982).

decision *Rosenau.* In particular, this case brings us to a juncture where we must either (1) abolish assumption of risk as a complete defense in all actions and treat it as a form of comparative fault that reduces the amount of damages a plaintiff would otherwise be entitled to recover or (2) reinstate subjective assumption of risk as a complete defense to actions based on ordinary negligence.

Finally, if the current status of the assumption of risk doctrine remains unchanged, I disagree with the allowance of punitive damages. As our law now stands, assumption of risk is a complete defense to an action sounding in recklessness, and plaintiff should not be able to collect punitive damages by alleging wanton and reckless misconduct when the underlying cause of action would be barred.

*I. Prejudicial error created by erroneous instruction.* In the controversial instruction, the court set out a subjective standard in defining the elements of assumption of risk. Specifically, the court instructed the jury that plaintiff was negligent in assuming the risk and his recovery should be reduced by the amount of that negligence if defendant proved that: (1) plaintiff was aware of defendant's intoxication and the danger to himself; (2) plaintiff had an alternative of subjecting or not subjecting himself to the danger created by defendant's intoxication; (3) plaintiff chose either expressly or impliedly to accept the risk; and (4) the intoxication was the proximate cause of plaintiff's harm. Although defendant's objection to the instruction was not a model of clarity, she did sufficiently point out that the instruction should have been based on a reasonable person standard. The majority admits the validity of defendant's objections but nevertheless holds that the erroneous instruction was harmless since the jury found for defendant on the tougher subjective standard by assessing plaintiff five percent negligence. I disagree.

Plaintiff's negligence should have been measured by whether a reasonable person would have placed himself in the automobile under the conditions as they then existed. *Cf. Rosenau v. City of Estherville,* 199 N.W.2d 125, 133 (Iowa 1972) (assumption of risk in a secondary sense is just another method of saying plaintiff was contributorily negligent). Obviously, this is a more easily met standard of proof since the jury need not find actual knowledge or conscious appreciation of the risk by plaintiff. Confronted with a more difficult standard of proof in order to find the plaintiff negligent, the jury could have compromised by finding for defendant but assessing plaintiff with a much lower percentage of fault. Recognition that juries do compromise is evidenced by our insistence in criminal cases that lesser and included offenses be submitted to the jury for consideration along with the principal charge. Here, the simpler objective standard would have reduced the possibilities and need for compromise and may well have resulted in higher percentage of negligence being assessed to the plaintiff. Thus, I would hold the instruction prejudicial and grant a new trial.

*II. Current status of implied assumption of risk.* At trial, defendant proposed and requested instruction on the subjective standard of assumption of risk (ultimately given by the court but only as a means of assessing plaintiff's contributory negligence) which would have completely barred recovery by the plaintiff. On appeal, defendant takes a somewhat different tack and although arguing the court erred in not giving the instruction, now seemingly claims the assumption of risk doctrine would operate only to bar punitive damages. Nevertheless, I believe defendant has sufficiently preserved error on this issue and at the same time, albeit inadvertently, pointed out the inconsistencies lurking in our tort law since the advent of comparative negligence. Thus, I believe we must squarely face the issue of what effect our adoption of comparative negligence should have on our decision in *Rosenau.*

In *Rosenau v. City of Estherville,* 199 N.W.2d 125, 133 (Iowa 1972), we abolished assumption of risk as a separate defense in

all actions in which contributory negligence was a defense. This decision was carefully limited to the secondary sense of the doctrine which we felt overlapped with the doctrine of contributory negligence and did not affect causes of action in which contributory negligence was not a defense. *Id.* at 131–33.

After *Rosenau,* assumption of risk was available as a complete defense in strict products liability actions. *See e.g., Hughes v. Magic Chef, Inc.,* 288 N.W.2d 542, 548 (Iowa 1980); *Aller v. Rodgers Machine Manufacturing Co., Inc.,* 268 N.W.2d 830, 838–39 (Iowa 1978); *Hawkeye Security Insurance Co. v. Ford Motor Co.,* 199 N.W.2d 373, 381 (Iowa 1972). It could also be used to defeat recovery in other strict liability actions. *See e.g., Franken v. City of Sioux Center,* 272 N.W.2d 422, 425 (Iowa 1979) (in a strict liability action based on duties arising from the possession of a wild animal, assumption of risk is a defense to count of strict liability although not available as a separate defense on negligence count if contributory negligence available as a defense); *Rippel v. J.H.M. of Waterloo, Inc.,* 328 N.W.2d 499, 500–01 (Iowa 1983) (allowing assumption of risk, [using same subjective standard employed by the trial court in this case], to defeat a dram shop action by a passenger knowingly and voluntarily riding with an intoxicated driver). Finally, assumption of risk was still available as a defense for more egregious conduct such as recklessness or intoxication in guest-passenger cases. *Six v. Freshour,* 231 N.W.2d 588, 591 (Iowa 1975); *Dutcher v. Lewis,* 221 N.W.2d 755, 762 (Iowa 1974).

In addition to not affecting secondary assumption of risk in certain cases, "*Rosenau* did not affect the doctrine in its primary meaning: 'an alternative expression for the proposition that defendant was not negligent, i.e., either owed no duty or did not breach a duty owed.'" *Parsons v. National Dairy Cattle Congress,* 277 N.W.2d 620, 622 (Iowa 1979) citing *Rosenau v. City of Estherville,* 199 N.W.2d 125, 131 (Iowa 1972). In *Parsons,* a patron of a hockey game sued the rink owner for negligence when she was struck by a flying puck while walking in an unprotected aisle. We overturned the ruling of summary judgment for defendant, since a genuine issue of fact existed concerning what duty was owed by the premises' owner in these circumstances. *See also Dudley v. William Penn College,* 219 N.W.2d 484 (Iowa 1974) (dismissal of action proper where baseball player struck by ball while sitting on player's bench accepted those hazards and thus no duty owed by college in these circumstances).

Retention of assumption of risk in its secondary sense in those cases in which contributory defense was not available as defense was not troubling as long as both defenses operated to completely bar recovery. Indeed, the primary rationale underlying our decision in *Rosenau* was to prohibit a defendant from using a double-barreled defense to defeat recovery when a single-barreled one was more than adequate for the job. 199 N.W.2d at 132–33.

With the advent of comparative negligence, plaintiff's contributory negligence no longer operates as a complete bar to recovery but instead mitigates the amount of damages a claimant is allowed to recover. *Goetzman v. Wichern,* 327 N.W.2d 742, 754 (Iowa 1982). Thus, we are left with the anomalous situation where assumption of risk can bar recovery for egregious conduct such as recklessness or wantonness but does not bar recovery for ordinary negligence. If a bullet can kill an elephant, should it not also be fatal to a hare. I realize that guest-passenger cases based on recklessness or intoxication were rendered nugatory by our decision in *Bierkamp v. Rogers,* 293 N.W.2d 577, 585 (Iowa 1980), where we struck down the guest law on state constitutional grounds. Nevertheless, I believe these cases still stand for the proposition that actions based on recklessness or more culpable conduct are subject to the defense of assumption of risk. *See also* Restatement (Second) of Torts § 503 (1965). Moreover, I find it somewhat incongruent that we allowed assumption of risk to be a defense in guest

cases (even after *Rosenau*) when a passenger was injured by an intoxicated driver; but now since these same cases can be brought on a negligence theory, we disallow the defense even though the conduct of the driver by being intoxicated and that of the plaintiff by knowingly and voluntarily assuming the risk are not in any way qualitatively different than in the guest statute cases.

And if that incongruity is not enough, the inconsistencies that may arise in dram shop type cases are even more disturbing. In *Lewis v. State*, 256 N.W.2d 181, 192 (Iowa 1977), we held that individuals who were injured by a drinking driver stated a common law negligence claim against a state liquor employee for illegally selling liquor to a minor. A dram shop action was not pled in that case because there was doubt whether, as a strict liability statute, it could be enforced against the State under Iowa's Tort Claims Act. *Id.* If that prediction in *Lewis* is valid, then a situation could arise where a state liquor store employee or the State could be sued on negligence theory by a passenger who knowingly and voluntarily assumed the perils of riding with an intoxicated driver. Although the passenger's negligence in riding with an intoxicated driver would reduce damages, the State could not assert assumption of risk to completely bar recovery. Conversely, a dram shop licensee could subsequently sell liquor to the same intoxicated individual and assert assumption of risk to totally defeat recovery by the same passenger. Again, I can see no qualitative or quantitative differences in these two cases justifying these different results other than the fortuitous circumstance that one action happen to sound in negligence while the other was based on strict liability.

As these examples amply demonstrate, our adoption of comparative negligence requires us to reexamine the doctrine of assumption of risk. The inconsistencies now apparent in our tort law can be resolved in one of two ways. We can adopt a system of comparative fault irrespective of the type of action and apportion damages not only in cases of contributory negligence but also when a defense is based on assumption of risk. I would have no problem in taking this course of action and, in fact, think that at this juncture it represents a reasonable solution to the inconsistencies lurking in our tort law since the adoption of comparative negligence. Under this approach, assumption of risk would never be a complete defense to strict liability actions or those based on reckless or wanton or willful misconduct but would merely operate to reduce the amount of damages plaintiff can recover. This is the course that has been suggested by some commentators and adopted by at least one court. *See e.g.,* Kionka, *Implied Assumption of Risk: Does it Survive Comparative Fault,* 3 So. Ill.U.L.J. 371 (1982); *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975). Other states that have adopted comparative negligence either by statute or judicial edict have split on the retention of assumption of risk and its effect have split on the retention of assumption of risk and its effect on comparative negligence. *See generally,* V. Schwartz, Comparative Negligence §§ 9.3 and 9.4 (1974, Supp.1981), *Annot.,* 16 A.L.R. 4th 700 (1982).

Barring this course of action, I believe for the sake of consistency we must reinstate assumption of risk as a complete bar to recovery in negligence actions. Under this approach, I would only apply comparative negligence principles to reduce recovery when a defendant claims that a plaintiff in the exercise of reasonable care should have known of the danger and acted unreasonably in disregarding his own safety by placing himself in a dangerous situation. On the other hand, if a defendant is able to meet the elements of the subjective assumption of risk doctrine as the defendant did in this case, then recovery would be barred. I would have no qualms in denying recovery if the jury finds—under a purely subjective test—that plaintiff knowingly and voluntarily confronted an apparent risk because I believe in these situations the bar to recovery has less to do

with plaintiff's fault than with his agreement by conduct to take the risk of the consequences that he suffered. As one commentator has suggested, when "[v]iewed from this perspective, it (assumption of risk) is a close cousin of the consent defense to intentional torts." V. Schwartz, *Comparative Negligence*, § 9.5 at 173 (1974).

Whatever course of action is ultimately chosen, I cannot join the majority opinion because I believe it fails to recognize and resolve irreconcilable differences in our tort law as it presently stands.

*III. Punitive damages.* Given the current status of the assumption of risk doctrine, I also disagree with the allowance of punitive damages. The trial court instructed the jury that they could not allow punitive damages unless the driver's conduct was wanton, reckless, or grossly negligent. Defendant argues that punitive damages should not be allowed when plaintiff consents to the conduct which gives rise to the cause of action. She points out that jury specifically found plaintiff assumed the risk and he should be barred from recovering punitive damages. I agree.

Conduct supporting an award of punitive damages has traditionally been equated with wanton and willful misconduct amounting to recklessness. *See e.g., Meyer v. Nottger*, 241 N.W.2d 911, 922 (Iowa 1976); *Sebastion v. Wood*, 246 Iowa 94, 99, 66 N.W.2d 841, 844 (1954). *See also* characterization of conduct justifying an award of punitive damages by Professor Ellis in his article *Punitive Damages in Iowa Law: A Critical Assessment*, 66 Ia.L.Rev. 1005, 1032–36 (1981). This conduct is something more than ordinary negligence.

As pointed out earlier, assumption of risk is a defense to recklessness. The conduct in this case allowing an award of punitive damages also amounts to recklessness. Since an underlying claim based on recklessness would be barred by assumption of risk, a jury should not be allowed to award punitive damages based on reckless misconduct when it also finds the injured party assumed the risk. *Cf. Harvey v. Leonard*, 268 N.W.2d 504, 516 (Iowa 1978) (punitive damages may not be awarded unless compensatory damages are appropriate).

Since my only quarrel with the majority concerns division I of the opinion, I dissent only from that division. Even barring a change in the present status of the law, I believe the erroneous instruction was prejudicial. Thus, I would reverse and remand for a new trial.

WOLLE, J., joins this dissent.

UHLENHOPP, Justice (dissenting).

I agree with the result Justice Schultz would reach and with most of his dissenting opinion, but, without retreating from *Goetzman*, I would expressly hold that subjective assumption of risk constitutes a complete defense to negligence—as well as to recklessness and strict liability. By subjective assumption of risk I mean that the plaintiff is aware of the defendant's tortious conduct and accepts the risk of it, as stated in *King v. Barrett*, 185 N.W.2d 210, 213 (Iowa 1971).

WOLLE, J., joins this dissent.